Good morning, your honors. I understand from the document Enter your name for the record, please. Well, Benjamin Lechman was appointed to handle this appeal. I'm not him. I actually Give us a clue who you are, will you? Well, it's not really important. I'm not his official representative. In fact, the files that I have here are I'm not even sure they're his files. Who are we talking to? Can you give us some idea? Actually, my name is Ben Lechman. My point is that I was trying to make was that in this case, Mr. Felix was Sentenced on the basis of information, and that information was unreliable because the source of that information Itself said we're not the official record. Well, is there any question about whether you're a lawyer and qualified to practice in front of this court? You know, I don't know if you need to have that information. He only got, you know, I think a double his sentence. This is just a little rhetorical device you're giving us here. Yes. Okay, I got it. I got it. It's not funny when we have to, you know, discuss it as a meta matter. But, yeah, that's my point, is that in this case, Mr. Felix objected to a one-point commission. Yes, my name is Ben Lechman. Yes, I'm a lawyer. And yes, I am admitted to practice for this court. I was appointed to represent Mr. Felix. And the point is, is that he signed a 57-month plea agreement. He ended up, in good faith, receiving 120 months, 10-year minimum mandatory sentence on the basis of, and only on the basis of, this one extra alleged prior criminal conviction out of Arizona State Court. He said that's not a conviction. I was never convicted. If there was an adjudication, the nature of that adjudication was some sort of deferred-type prosecution that would not otherwise score under Section 4A of the U.S. Sentencing Guidelines. Well, tell me, Mr. Lechman, if that is who you are. I have a, you know, a document that looks like he, from the Pima County Superior, or the Pima County Court that says that he was, looks like adjudicated guilty, went to jail, and got probation. Right. I have two points about that. One is, that Pima County website, anyone can access that information. And on page 25 of my reply, I just cut and pasted off the website its disclaimer. This is what it says. The Pima County Justice Court declares that the information provided and obtained from this site does not constitute the official record of the court. I know in Snellenberger recently, the en banc decision, that there was a big part of the rationale allowing minute order to abstract, because it's an official record of the court. It should be relied upon. But here, this site explicitly tells you that the documents that you're looking at right now, they are not the official records of the court. Well, how do you distinguish, Lenny, how do you distinguish your client's case from the United States, to be Marin Cuevas, where this court, we upheld the assignment of a criminal history point based on the probation officer's reading of computer records. That's the polar opposite of this case. In Marin Cuevas, the defendant didn't challenge the conviction below. He also didn't dispute that he was convicted. There wasn't anything about the nature of the criminal conviction that was at issue in that case. His only argument, and this court sort of does sort of linchpin of the decision, his only argument was there's just not enough proof here. Now, Mr. Felix's argument is a lot different. Number one, his argument is this proof itself tells you, do not trust this proof. We are not the official record of the court. It's like if someone came in here today and said, I'm not really Mr. Felix's attorney. But you can trust me. That's all right. Marin, the defendant there, he didn't challenge the reliability of the information. That's another part of the opinion. And I think that it's easily distinguishable based on a couple of cases that are in my reach, which is a case where it's one of these illegal entry cases. And in that case, the defendant was previously convicted of a crime that was categorically an aggravated felony. The court didn't have to engage in one of these modified categorical things where you look at other documents. On his face, categorically an aggravated felony. The only issue was just the fact of conviction. Was the defendant actually convicted? And this court said, well, in that instance, we need to have some sort of judicial documentation to prove that. So I think, oh, and there's another case. That is, it's in my briefs. The government never responded to it. It's in the opening and the reply. And that is Sanders. And then Sanders, sort of a similar fact pattern in the sense that the defendant had two Arizona, I don't want to state, they were juvenile, California juvenile convictions. And the first one, he said, yes, I can see it. I do have that. The second one, that is not an actual adjudication of guilt. And what this court did is it looked at the California Welfare Institution's code and said, you know, based on the way the documents sort of lay this out, this might actually not be a conviction. And so this court said. But your client's position is not that it's not him. It's that he was diverted and so, therefore, it doesn't count as a conviction, right? That's half of his argument. His other half is there's no conviction at all. Well, I know. And he didn't put on any evidence of anything on diversion, right? No. No one did. No one did. But the point is, in my briefs, I cited the Arizona code to say, let's just, assuming our agenda, we can take Pima County, despite what they tell us, we can take them as being accurate. Well, based on Arizona law, as you look at what's there that's listed, that actually would be subject to a diversion. But that still doesn't mean that a person was diverted. And if you want to be diverted, that requires that, you know, I mean, many of us here did some criminal law, and we know that then you have to, you know, go to your diversion program, you have to complete it, then you have to show completion, and then the court removes it from your record or, you know, whatever that, you know, depending on whether you, you know, show the diversion, whether an expungement, anything, there's no proof of that. Well, if we have reliable records from the court, there might, in fact, be. That was his point. And that is exactly what happened in Sanders. The defendant couldn't prove that this juvenile adjudication was what he said it was. He just said, if you look at the law here, it might actually not be an adjudication of guilt. What this court said is, you know, it's sort of unfair. It's sort of like a Mulaney versus Wilbur. In reality. How true did your client actually submit that he applied for diversion, that he went to a diversion program, that he successfully completed it? None. And he wouldn't have to under Sanders, and he wouldn't have to as a constitutional matter. It's unconstitutional under Mulaney and under Winship to force the defendant to disprove his prior convictions. So your position would be that, first off, is that the record's not reliable. But even if the record. They tell you it's not. But even if the record were reliable, that your client, even though it doesn't show that any diversion, that he would, he could just say, because if you look at the law, you could potentially be diverted, that therefore he must have been, and you can't use it. Well, if this Court's decision in Sanders is still binding, and I believe that it is, yes, you cannot force the defendant to prove. You know, the government counsel's brief is like, their argument is a mischaracterization of my argument, that I'm saying I'm trying to prove his prior conviction is infirm. I'm not saying that at all. I'm saying that, one, there is no conviction at all. It's a fact of conviction. Two, that the nature of, if there is an adjudication, and defendants can raise their defenses in the alternative, two is that if there is any kind of adjudication, it's not an adjudication of guilt pursuant to the Arizona statutes that I cited. And this Court has held in Sanders that, in that situation, that you just can't assume that there's a conviction. If there's a good faith argument that it's not, you can't just assume that. And in Sanders, we didn't even have the extra, you know, wrinkle to the analysis here, where the records themselves tell you, don't trust this. This is not the official record. We think it could be inaccurate. In fact, other people have access to this site in terms of what they're putting on that site, and we don't have any control over that. So to that extent, I say it's wrong. It's also unconstitutional under Charlesworth. That was a case where the defendant was convicted of escape from custody, and there's a reduction in sentencing guidelines if you do not commit a felony while you are in custody. The government said, he needs to prove that. This Court said, that's ridiculous. It's unfair to make a defendant prove that he was not convicted. How would he prove a negative? It's impossible. Same thing here. You say, well, what did you present? Well, Mr. Felix can't prove that he wasn't convicted, but the government can't prove that he was. And in that situation, under Sanders … He could testify. He could testify. I went to a diversion program. He could have. But he didn't. No, I wasn't the attorney below. I didn't ask you that. I asked you, he didn't testify. He did not. So, I mean, he could have. Right now, you could argue that maybe he was diverted. Maybe he got a gubernatorial pardon. I mean, you could argue anything. There's no evidence in any of this. The only evidence there is tells you, don't look at this evidence. It's not reliable. And there's got to be some level to what a court can consider. And I submit that when the evidence itself tells you, do not rely on this, then this court ought to take that on its face and say, you know, we will not rely on that. Thank you very much. You can reserve the rest of your time. Good morning. Good morning, Your Honor. Dadeen Fennell on behalf of the United States. Really? May it please the Court. The issue in this case is whether the district court clearly erred in assigning Mr. Felix's criminal history category. The standard of review is clear error for factual determinations regarding existence of prior sentences for purposes of assigning criminal history points during sentencing. And that's what we're talking about here is assigning criminal history points. The first what we need to determine is the standard. And the standard is preponderance of the evidence. Mr. Felix did not object to the preponderance of the evidence. Are you kind of, just for purposes of here, you also had a waiver issue. Are you kind of backing off of that? I am, Your Honor. Based upon Buchanan. I was just going to ask you if you could distinguish Buchanan. But all right. It just seems to me that AUSAs need to know if they have a clean waiver, and then the judge says something different. Someone's got to object to that and straighten it out. I agree, Your Honor. And based upon Buchanan, when the court did make a statement that Mr. Felix could appeal and the government not objecting, then he does have the right to raise the appeal. All right. So you're going to the merits. Then that being the case, his second misdemeanor conviction made him eligible in the safety valve, right? Provision? That's correct. And thus increased his sentence. Why does the government not have the burden all the way to prove the conviction and why shouldn't the standard of proof be clear and convincing evidence considering the disproportionate impact of increasing the sentence from 57 months to 120? Thank you, Your Honor. There's a lot of questions within that. Right. And I'm sure you'll cover them. Yes, Your Honor. The first, the government does have the burden to prove that Mr. Felix had the misdemeanor conviction, which would take him out of the realm of the safety valve. And the government did meet that burden. But first of all, I have to respectfully disagree with counsel when he says that Mr. Felix never said that he was convicted, because on four different occasions throughout the record do you see that Mr. Felix does admit that he has this conviction. And I can cite to the record first on the March 26th objections that were filed on excerpts of record 27 and 28, Mr. Felix says that he is filing his objection based upon the diversion, not the fact that he didn't get convicted of this crime. Secondly, at the hearing on March 26th, he claimed that he tried to remove this point through the marijuana conviction, but was unsuccessful. So the first conviction he tried to remove. But when he was unsuccessful, he decided to move then to the second misdemeanor, which was the assault case. And he says, now let's look at the assault case. And there's no legal basis to attack the underlying conviction. But we are bringing up the point that it was diverted. So, again, the second time he says, I was convicted, but it was diverted. And then, again, on the April 2nd sentencing hearing, which is excerpts of record 15, the district court advised the defendant that he offered nothing to support his contention that the case was dismissed. And in response to that, the defendant reiterated that the challenge doesn't score because it was diverted, not because he was convicted. So really we need to start with the fact that he already admitted that he was convicted and really then the government has already met its burden. But besides that, the district court did find that the government did meet the burden with sufficient reliability. And what the government provided was not just the Pima County records, but the PSR, the testimony of the probation officer, the addendum to the PSR. The probation officer not only got the records from the consolidated, Pima County consolidated courts, but they also called a clerk of the court there, mind you, yes, it is hearsay, but called to confirm to make sure, one, that it was a conviction and that they were not misreading anything within that record, and two, that there wasn't anything within that record that they were missing to determine that it was dismissed, diverted, set aside, or vacated. And the probation officer was told that there was nothing in this record to show that. And that was all presented to the district court, and the district court relied upon that and found that the government met by preponderance of the evidence that he was convicted and that there was no evidence in the record to show that it was diverted. Now, why shouldn't it be clear and convincing? The courts have stated that generally the standard for factual determination that sentencing is preponderance of the evidence. In the cases that show clear and convincing, those are cases in which it's not a guideline calculation, but it is an enhancement under the sentencing guidelines. There is a difference there. And, in fact, in my ---- Well, there's a lot of writing on this being accepted, right? I mean, he was subject to a mandatory, was it 10-year prison term? That's right, Your Honor. And if this were, let's just say this conviction were torn up, not recognized as valid, what would the sentencing range be? The sentencing range would be 51 to 57, I think. 57 to 68 months, I believe. I mean, there's a lot dependent on this. That is true, Your Honor. However, in this case, the defendant did know that he had two misdemeanors and that he would have to get over that hurdle in order to get the benefit of the safety valve. And in order to get the benefit, he has to not have those convictions. It's just ---- No, but he doesn't really have to do anything. You have to show by some standard of proof, whether it's preponderance or clear and convincing. My question to you is if there's a lot writing on this, as we've just seen, if there's a lot writing on this, why shouldn't the standard be clear and convincing? In this case, the disproportionate test does not apply. Dare tells us that only in cases ---- in cases, excuse me, in cases where the mandatory minimum is applicable, it's only clear and convincing, and that in cases where there's an enhancement, that's ---- You just said it's only clear and convincing where the ---- That it should be preponderance of the evidence in cases in which the mandatory minimum is applicable, where in cases where the guidelines are ---- where the enhancements for an aggravated underlying felony or underlying conviction, it should be clear and convincing. And in Dare, that's the holding. Did that more than double the sentence, do you recall, in Dare? I ---- In this case, this conviction more than doubles the sentence. That's correct. Okay. Is that the situation in Dare as well? I'm not sure, Your Honor. I don't believe so. I think there was a four-level discrepancy in Dare, and here we may have an extra level. Well, did Dare hold that the mandatory minimum sentence is not an enhanced sentence and accordingly does not require clear and convincing? Did it hold that? Can you repeat that? Did Dare hold that the mandatory minimum sentence is not an enhanced sentence and accordingly does not require clear and convincing? That's correct. And this is a mandatory minimum sentence? This is a mandatory minimum sentence. So you're saying that Dare is right on point here and that it's Ninth Circuit precedent and we're bound by it? That's correct. And finally, with regard to whether or not the burden of proof shifts, the government did prove by preponderance of the evidence that this defendant did sustain this conviction, which would take him out of the safety belt realm. The Court then told Mr. Felix that he, in fact, then had the burden to show that his conviction had been diverted. And, in fact, he did not provide any evidence whatsoever to prove that his conviction was set aside. He didn't testify. He did not submit a declaration by his prior counsel or by himself. There was nothing that he provided. And once the burden shifts to show that the conviction is infirm or that it was set aside, then it is the defendant's burden to show that. And in this case, he did not. So since the government was able to show by sufficient reliability in the documents that were provided as well as the testimony of the probation officer, the district court should be affirmed. Is there any other questions? I don't think so. Thank you, Ms. Finley. Thank you. You have 30 seconds. With regard to assigning criminal history, this was a large shift. Dare is distinguishable because that case held that the application of a disproportionate impact test only would apply only if dare sentences were imposed by reference to enhancements under the guidelines. I mean, this is a case where it creates his one-point sentence creates the increase. It's mandatory. As this Court has held in Jordan and Toliver, this Court is going to look for the effect of something rather than the label that someone may place upon it. And this did contest that he was convicted. If this Court remands the case, he's not going to get the minimum mandatory on a resentencing. He is going to get, I think, what he signed for. And I think that can be fixed if he is competent counsel before him at the district court, which he did not in this case. Thank you very much. Thank you. The case is submitted.
judges: Hall, Silverman, Callahan